```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
1613 HARVARD LIMITED          )
PARTNERSHIP,                  )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No. 05-726 (RWR)
                              )
DISTRICT OF COLUMBIA, et al., )
                              )
        Defendants.           )
_____)
```

## MEMORANDUM OPINION

Plaintiff 1613 Harvard Limited Partnership ("Harvard") brought an action against defendants the District of Columbia, Patrick Canavan, Acting Director of the District of Columbia's Department of Consumer and Regulatory Affairs ("DCRA"), and Paul Waters, Acting Administrator, DCRA, Housing Regulation Administration ("HRA") (collectively the "District") claiming that the District violated Harvard's due process rights under the Fifth Amendment by delaying condominium conversion of an 80-unit apartment building located at 1613 Harvard Street, N.W. (the "Property").  The District filed a motion to dismiss for failure to state a claim or for summary judgment, claiming that Harvard failed to identify a constitutional injury.  Because Harvard has not shown that it has an established property interest that triggers constitutional due process protections, the District's motion will be granted.  Harvard also moved to file a second

amended complaint.  Because the second amended complaint would not survive a motion to dismiss, Harvard's motion will be denied.

## BACKGROUND

Harvard sought to convert the Property into a condominium under the Condominium Act of 1976, codified at D.C. Code § 42-1904.01 et seq., and the Rental Housing Conversion and Sale Act of 1980, codified at D.C. Code § 42-3401.01 et seq., upon receiving a certificate of eligibility for conversion.  Harvard then issued to each current tenant of the Property an offer of sale, accompanied by a 120-day notice to vacate.  (Am. Compl. ¶ 14.)

On January 28, 2005, the HRA administrator sent Harvard a letter stating that an investigation had begun concerning tenant complaints about the conversion of the Property and requesting related information from Harvard.  (Am. Compl. ¶ 19.)  The letter also requested that Harvard refrain from taking any action that would interfere with the investigation "including, but not limited to, engaging in any further actions related to the disposition of the Property."  (Am. Compl. ¶ 20.)  A subsequent letter asked for additional documentation.  Harvard maintains that it responded to each of these letters with the requested information.

Beginning in February 2005, District Councilmember Jim Graham, chair of the Committee on Consumer and Regulatory

- 3 -

Affairs, held oversight hearings with respect to DCRA and instructed DCRA to initiate legal action against Harvard.  Soon thereafter, DCRA issued a temporary cease and desist order requiring that Harvard halt all conversion efforts to determine compliance with applicable regulations.[1]

Harvard maintains that the cease and desist order, which does not identify any violations of the Condominium Act and the Rental Housing Conversion and Sale Act, unconstitutionally prohibits it from "engaging in any activities that may facilitate a sale (or any other type of disposition) of the Property; and . . . taking any action to evict or, in any way, force the current tenants of the Property to vacate their respective living units" (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), Ex. 2), and restricts its ability to seek judicial remedies.[2]  Harvard also alleges that the individual defendants' actions were taken with evil intent.  (Am. Compl. ¶ 34.)  The District moved

---

[1]   After issuing a cease and desist order on March 14, 2005 (Pl.'s Opp'n, Ex. 1), the District issued an amended cease and desist order on the same date adding language regarding its rationale for the injunctive order.  (Pl.'s Opp'n, Ex. 2.)  With the exception of this additional language, the two cease and desist orders are identical.

[2]   "[T]he Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed [rights].'"  Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-30 (1982) (quoting Boddie v. Conn., 401 U.S. 371, 380 (1971)).

- 4 -

to dismiss, or in the alternative for summary judgment, claiming that Harvard fails to identify any right prompting due process protections and that the individual defendants are protected from suit under the doctrine of qualified immunity.

## DISCUSSION

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the allegations stated in a plaintiff's complaint "must be enough to raise a right to relief above the speculative level[.]"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  The complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations." Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004). If a plaintiff fails to allege sufficient facts to support a claim or simply provides a "formulaic recitation of the elements of a cause of action[,]" the complaint must be dismissed. Twombly, 127 S. Ct. at 1965.

In determining whether a complaint fails to state a claim, a court must consider only facts alleged in the complaint, documents either attached to or incorporated in the complaint, or matters of which the court may take judicial notice.  "'[T]he court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment.'"  Baker v. Henderson, 150

- 5 -

F. Supp. 2d 17, 19 n.1 (D.D.C. 2001) (citing <u>Marshall County Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

I.  MUNICIPAL LIABILITY

Section 1983 of Title 42, United States Code, provides a remedy for the "deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 283 (2002) (quoting 42 U.S.C. § 1983).  In assessing whether a § 1983 complaint states a claim for municipal liability, a court must first determine "whether the complaint states a claim for a predicate constitutional violation. . . .  [I]f so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation."  <u>Baker v. Dist. of Columbia</u>, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted). Harvard maintains that the District cites no conduct necessitating the cease and desist order, and that the District deprived it of its Fifth Amendment right not to be deprived of property without due process.  Harvard does not specify what the nature of this property interest is.  However, it appears that Harvard claims that the District's temporary cessation of condominium conversion and denial of a judicial remedy for the temporary cessation constitutes a predicate constitutional

injury.[3] The District contends that what Harvard "claims is a breach of its constitutional rights is nothing more than an ordinary local regulatory dispute." (Defs.' Mot. to Dismiss, Mem. of P. & A. ("Defs.' Mot. to Dismiss") at 7.)

The first step in either a procedural or substantive due process analysis is to determine "whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993). Property interests are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). To demonstrate a property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bloch v. Powell, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (quoting Roth, 408 U.S. at 577).

---

[3] Harvard never specifies whether that denial is a violation of substantive or procedural due process rights. The analysis of its allegations under each theory, see Save Our Schools-SE. & NE. v. D.C. Bd. of Educ., Civil Action No. 04-1500, 2006 WL 1827654, at *14 (D.D.C. July 3, 2006) (stating that because plaintiffs never clarified whether procedural or substantive due process was at issue, "the viability of both" was analyzed), proceeds no farther than the first prong common to both theories, however, as is explained below.

- 7 -

If government officials may grant or deny a benefit within their discretion, it is not a protected entitlement.  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005); see Lopez v. Fed. Aviation Admin., 318 F.3d 242, 249 (D.C. Cir. 2003).

Under either theory of a due process deprivation –- infringement of Harvard's right to convert the Property or its inability to seek a judicial remedy -– Harvard has not alleged the existence of any statutory property interest to which constitutional due process safeguards apply.  Harvard claims that the District acted in violation of the Rental Housing Conversion and Sale Act and the Condominium Act, but fails to establish that these statutes provide a property interest in ensuring uninterrupted condominium conversion or access to the courts to remedy temporary cease and desist orders.  Indeed, the specific statutory provisions cited by Harvard, section 42-3405.06(b) of the Condominium Act and section 42-1904.14(b) of the Rental Housing Conversion and Sale Act, contain identical clauses allowing the Mayor to issue a temporary cease and desist order if the "public interest will be irreparably harmed by delay in issuing an order . . . ."  Thus, the ability to allow continuous conversion free from any injunctive order is clearly discretionary.  See Lopez, 318 F.3d at 249 (finding no property interest because the FAA had the authority to "rescind [the] delegation . . . at any time for any reason" (quoting 49 U.S.C.

- 8 -

§ 44702(d)); cf. 3883 Connecticut LLC v. Dist. of Columbia, 336 F.3d 1068, 1073 (D.C. Cir. 2003) (finding a property interest where statutes limited discretion to terminate or suspend work under a building permit and noting that "[d]iscretion is not unfettered . . ., but instead is constrained sufficiently to give [plaintiff] an expectation in the continued effect of the permits -- and therefore a property interest in them"). Harvard does not show that the statutes at issue conferred any unfettered right to convert the Property into condominiums. Rather, sections 42-3405.06(b) and 42-1904.14(b) give wide discretion to the mayor to temporarily halt conversion for any irreparable harm.[4]

---

[4] Harvard repeatedly claims that because the District did not base its cease and desist orders on violations of the applicable statutes, its due process rights were infringed. However, the statutes do not require a finding of a violation of those statutes to temporarily enjoin actions related to condominium conversion. The only reference to the requirement that a violation be stated comes from the language of subsection (a) of both of these statutes which addresses permanent, rather than temporary, orders. Section 42-3405.06 states that
> "The Mayor shall have the power to enforce this chapter and rules and regulations made hereunder. If the Mayor determines after notice and hearing that a person has: (1) violated any provision of this chapter; (2) violated any condition imposed in writing in connection with the granting of any application or other request under this chapter; or (3) violated any lawful order or rule of the agency; the Mayor may issue an order requiring the person to cease and desist from the unlawful practice and to take such affirmative action as in his or her judgment will carry out the purposes of this chapter."

D.C. Code § 42-3405.06(a); *compare with* D.C. Code § 42-3405.06(b) ("If the Mayor makes a finding of fact in writing that the public interest will be irreparably harmed by delay in issuing an order,

- 9 -

Additionally, although the cease and desist order temporarily prohibited Harvard from evicting any tenants, Harvard was not barred from seeking judicial intervention regarding the enforcement of that order in either local or federal court.  In fact, Harvard did seek redress from the Superior Court for the District of Columbia despite Harvard's generally worded claim that "[t]he words used by the District unmistakably banned access to the courts[.]"  (Pl.'s Opp'n at 8.)[5]

Further, the Condominium Act and Rental Housing Conversion and Sale Act both state that "[p]rior to issuing the temporary cease and desist order, the Mayor shall give notice of the proposal to issue a temporary cease and desist order which shall include in its terms a provision that upon request a hearing will be held promptly to determine whether or not such order becomes permanent."  D.C. Code § 42-3405.06(b).  Thus, Harvard has a "meaningful opportunity to be heard[,]" Boddie v. Conn., 401 U.S. 371, 377 (1971), even without judicial recourse for the halted conversion.  Given that the statute mandates both notice and the availability of a hearing, Harvard has not made apparent that it is entitled to any additional or judicial process.  Cf. Fuentes

---

the Mayor may issue a temporary cease and desist order.").

[5]   Taking judicial notice of court records cited by Harvard does not convert the motion to dismiss into one for summary judgment.  See Baker v. Henderson, 150 F. Supp. 2d at 19 n.1.

v. Shevin, 407 U.S. 67, 80 (1972) (noting that "the central meaning of procedural due process [is] clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified" (internal citations omitted)); see Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 n.5 (1982).

Harvard fails to demonstrate that it has any statutory or other property right to uninterrupted condominium conversion or access to courts to remedy a temporary cease and desist order. Failing to show a protectable substantive or procedural due process right, Harvard does not state a predicate constitutional injury for section 1983 purposes. Because that failure ends the section 1983 inquiry, Baker v. Dist. of Columbia, 326 F.3d at 1306, Harvard has failed to state a section 1983 claim against the individual defendants or the municipality.

II. QUALIFIED IMMUNITY

The District also seeks dismissal contending that defendants Canavan and Waters enjoy qualified immunity from being sued in this action. (Defs.' Mot. to Dismiss at 14.) Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity defense was recognized to help

protect government officials from the burden of having to defend lawsuits based upon insubstantial claims.  Id.  "For a public official to be liable for damages, that official must have violated a constitutional right, *and* that right must have been 'clearly established' -- 'the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'"  Int'l Action Ctr. v. United States, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

A court engaging in a qualified immunity analysis must "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  Conn v. Gabbert, 526 U.S. 286, 290 (1999).  However, the relevant constitutional right must be defined with some specificity -- "[i]t does no good to allege that police officers violated the right to free speech, and then conclude that the right to free speech has been 'clearly established' in this country since 1791.  Instead, courts must define the right to a degree that would allow officials reasonably to anticipate when their conduct may give rise to liability to damages."  Int'l Action Ctr., 365 F.3d at 25 (internal citations and quotations omitted).

- 12 -

Although Harvard alleges that the individual defendants maliciously deprived it of due process, such a finding would rest upon a level of generality that courts have forbidden.  See, e.g., Anderson, 483 U.S. at 639 (noting that "the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. . . . But if the test of 'clearly established law' were to be applied at this level of generality, . . . [p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights").  As is stated above, Harvard has not demonstrated that the actions taken by the individual defendants to temporarily halt the conversion deprived Harvard of a constitutional right. See Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").  Harvard has not established an independent statutory or other source for a claimed right to an uninterrupted conversion or a judicial remedy for a temporary cease and desist order. Thus, there is no clearly established law that the individual defendants knowingly violated.  Additionally, "'bare allegations

of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.'" Crawford-El v. Britton, 523 U.S. 574, 588 (1988) (quoting Harlow, 457 U.S. at 817-18).

III. SECOND AMENDED COMPLAINT

Harvard also moved to file a second amended complaint to add Roland Driest, Surveyor of the District of Columbia, as an individual defendant claiming that Driest violated its constitutional due process rights by refusing to record plats and plans submitted by Harvard.  (Mot. for Leave to File 2d Am. Compl., Mem of P. & A. in Supp. of Mot. ("Mot. for Leave to File") at 2-3.)  The District opposed Harvard's motion claiming that Driest, like the other individual defendants, is protected from suit under the doctrine of qualified immunity, and that amending the complaint to add a claim against him would be futile.  "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

Harvard claims that under D.C. Code § 42-1902.14(f), the Surveyor "has no discretion to decline or refuse to record the Plats and Plans."  (Mot. for Leave to File at 2.)  The relevant language of § 42-1902.14(f) states that "[i]f plats and plans are filed . . . with the required certification, the Office of the

- 14 -

Surveyor shall record such plats and plans without further certification or review." Harvard contends, and the District does not contest, that the plats and plans were filed with the required certification. Driest refused Harvard's request because he believed there to be pending legal challenges regarding title and ownership of the property given the lis pendens the District had filed with the Recorder of Deeds after HRA's and DCRA's actions were taken. (Mot. for Leave to File at 3; Ex. 1 ¶ 33.) However, there is nothing in the statutory language that permits the Surveyor to decline his recordation duty because of pending legal disputes; indeed the Surveyor's role appears to be largely ministerial as he must "record such plats and plans without further certification or review" provided they are filed with the required certification. D.C. Code § 42-1902.14(f).

While Driest's conduct may have violated Harvard's recordation right, under the qualified immunity doctrine "the relevant inquiry is whether the conduct complained of . . . violated a clearly established constitutional right." Walker v. Jones, 733 F.2d 923, 933 (D.C. Cir. 1984). This inquiry occurs "in light of the specific context of the case." Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (internal quotations omitted). Here, Driest's actions do not rise to the level of a deprivation of a clearly established constitutional due process right with contours so clear that a reasonable person in Driest's position

could have anticipated that his refusal to record the plats and plans because of his perception of a cloud on title to the Property would "give rise to [constitutional] liability." Davis v. Scherer, 468 U.S. 183, 195 (1984); see Silverman v. Barry, 845 F.2d 1072, 1087 (D.C. Cir. 1988) (noting that while the District's actions in halting a condominium conversion were nonexemplary, "nonexemplary governmental administrative actions do not automatically rise to the level of due process violations" particularly when a government official articulates a legitimate government interest).  Courts have expressed a concern about "official violations of [state] laws automatically creat[ing] federal causes of action[.]" Silverman, 845 F.2d at 1079 (internal citations and quotations omitted).  Harvard has cited no prior published decisions or other facts that would have put Driest on reasonable notice that his inaction would violate the Constitution.  The District has established that Driest is immune from suit, and Harvard's motion for leave to file a second amended complaint adding him as a defendant will be denied as futile.

CONCLUSION

Harvard alleges that the District violated its due process rights but fails to establish any entitlement to proceed with unfettered condominium conversion or to judicial recourse for temporarily interrupted conversion.  Because Harvard has not

- 16 -

alleged a constitutional due process violation, it has failed to state a claim for which relief could be granted.  Additionally, the District has established that the named and proposed individual defendants are protected from suit under the doctrine of qualified immunity.  Thus, the District's motion to dismiss will be granted, and Harvard's motion for leave to file a second amended complaint will be denied.  A final Order accompanies this Memorandum Opinion.

    SIGNED this 19th day of July, 2007.

```
                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge
```